UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRIAN ENGLE,

       Plaintiff,                          Hon. Paul L. Maloney

v.                                            Case No. 1:20-cv-113

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.
_____/

## REPORT AND RECOMMENDATION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of Social Security appeals, the undersigned recommends that the Commissioner's decision be affirmed.

## STANDARD OF REVIEW

The Court's jurisdiction is limited to a review of the Commissioner's decision and of the record made in the administrative hearing process. *Tucker v. Commissioner of Social Security*, 775 Fed. Appx. 220, 225 (6th Cir., June 10, 2019). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *Id.* at 224-25. Substantial evidence is more than a scintilla, but less than a preponderance, and constitutes such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Livingston v. Commissioner of Social Security*, 776 Fed. Appx. 897, 898 (6th Cir., June 19, 2019).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *Biestek v. Commissioner of Social Security*, 880 F.3d 778, 783 (6th Cir. 2017). The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *Moruzzi v. Commissioner of Social Security*, 759 Fed. Appx. 396, 402 (6th Cir., Dec. 21, 2018). This standard affords to the administrative decision maker considerable latitude and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *Luukkonen v. Commissioner of Social Security*, 653 Fed. Appx. 393, 398 (6th Cir., June 22, 2016).

## BACKGROUND

Plaintiff was 42 years of age on his alleged disability onset date. (ECF No. 6-6, PageID.252). He successfully completed high school and worked previously as a meat cutter, delivery route truck driver, and courtesy clerk. (ECF No. 6-2, PageID.61). Plaintiff applied for benefits on February 14, 2017, alleging that he had been disabled since March 28, 2016, due to degenerative disc disease, back surgery, leg pain, back pain, knee pain, ringing in his ears, and attention deficit disorder. (ECF No. 6-6, 6-7, PageID.252-64, 317).

Plaintiff's applications were denied, after which time he requested a hearing before an Administrative Law Judge (ALJ). (ECF No. 6-3 – 6-5, PageID.110-249). Following an administrative hearing, ALJ Amy Rosenberg, in an opinion dated December 13, 2018, determined that Plaintiff did not qualify for disability benefits. (ECF No. 6-2, PageID.49-63, 68-108). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (*Id.*, PageID.23-28). Plaintiff subsequently initiated this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## ANALYSIS OF THE ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f). If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also

provide that if a claimant suffers from a non-exertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity.  *See* 20 C.F.R. §§ 404.1545, 416.945.

Plaintiff bears the burden to demonstrate he is entitled to disability benefits and he satisfies his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy.  *See* 42 U.S.C. § 423(d)(2)(A).  While the burden of proof shifts to the Commissioner at step five of the sequential evaluation process, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functioning capacity (RFC) is determined.  *O'Neal v. Commissioner of Social Security*, 799 Fed. Appx. 313, 315-16 (6th Cir., Jan. 7, 2020).

The ALJ determined that Plaintiff suffers from: (1) degenerative joint disease of the cervical and lumbar spine; (2) tendinopathy and degenerative joint disease of the right shoulder; (3) right carpal tunnel syndrome; and (4) obesity, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (ECF No. 6-2, PageID.52-53).

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the ability to perform light work subject to the following limitations: (1) he needs a sit/stand option allowing him to work in either a seated or standing position while remaining on task at his job duties; (2) he will need to change position at unpredictable intervals; (3) changes in position will not cause him to be off-task from his job duties more than 10 percent of the workday; (4) he can occasionally climb ramps and stairs, but can never climb ladders, ropes, or scaffolds; (5) he can occasionally balance, stoop, kneel, crouch, and crawl; (6) he can only occasionally reach overhead with his right upper extremity, but can frequently reach in other directions; (7) he can frequently handle, finger, and feel; and (8) he cannot work at unprotected heights, use vibrating tools, operate heavy machinery, or drive commercial motor vehicles. (*Id.*, PageID.53).

The ALJ found that Plaintiff was unable to perform his past relevant work at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that there exists in the national economy a significant number of specific jobs which Plaintiff can perform, his limitations notwithstanding. *O'Neal*, 799 Fed. Appx. at 316. In satisfying this burden, the ALJ may rely on a vocational expert's testimony. *Ibid.*

In this case, a vocational expert testified that there existed approximately 309,000 jobs in the national economy which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (*Id.*, PageID.98-101). This represents

a significant number of jobs.  *See, e.g., Taskila v. Commissioner of Social Security*, 819 F.3d 902, 905 (6th Cir. 2016) ("[s]ix thousand jobs in the United States fits comfortably within what this court and others have deemed 'significant'"). Accordingly, the ALJ concluded that Plaintiff was not entitled to benefits.[1]

## I. Plaintiff's RFC

A claimant's RFC represents the "most [a claimant] can still do despite [his] limitations." *Sullivan v. Commissioner of Social Security*, 595 Fed. Appx. 502, 505 (6th Cir., Dec. 12, 2014); *see also*, Social Security Ruling 96-8P, 1996 WL 374184 at *1 (Social Security Administration, July 2, 1996) (a claimant's RFC represents her ability to perform "work-related physical and mental activities in a work setting on a regular and continuing basis," defined as "8 hours a day, for 5 days a week, or an equivalent work schedule").  The ALJ concluded that Plaintiff can perform a limited range of light work.  Plaintiff argues that the ALJ's RFC assessment is not supported by substantial evidence.  Specifically, Plaintiff argues that the ALJ failed to sufficiently account for his need to use a cane and improperly considered his various activities.  The Court is not persuaded.

On several occasions, Plaintiff's care providers reported that Plaintiff was using or carrying a cane.  (ECF No. 6-8, 6-9, 6-10, PageID.393, 450, 462, 490).  As Plaintiff acknowledged, however, none of his care providers instructed him to use a

---

[1] The vocational expert further testified that if Plaintiff were further limited to sedentary work there still existed approximately 127,000 jobs in the national economy which Plaintiff could perform.  (ECF No. 6-2, PageID.101-02).

cane.  (ECF No. 6-2, PageID.93-94).  Moreover, the medical record fails to support the argument that Plaintiff required a cane or that his ability to ambulate is more limited than the ALJ recognized.

On March 29, 2016, a nurse noted that Plaintiff was "ambulating with a cane," but the results of a physical examination were unremarkable and Plaintiff was prescribed ibuprofen.  (ECF No. 6-8, PageID.393-94).  X-rays of Plaintiff's lumbar spine revealed "mild" spondylosis, but were otherwise unremarkable.  (*Id.*, PageID.404).  Treatment notes dated April 1, 2016, indicate that Plaintiff was "using a cane," but the results of a physical examination were again unremarkable.  (ECF No. 6-9, PageID.450).  Treatment notes dated April 7, 2016, indicate that Plaintiff exhibited "a lot of moans and groans" during an examination.  (*Id.*, PageID.454).  The examination, however, revealed "no neurological signs" of impairment and instead suggested that Plaintiff was engaged in "possible symptom magnification."  (*Id.*).

On April 28, 2016, one of Plaintiff's care providers noted that Plaintiff "again has his cane."  (*Id.*, PageID.462).  It was further noted, however, that Plaintiff "is able to stand without [the cane]" and was able to get on and off the examination table without difficulty.  (*Id.*).  The results of the examination were unremarkable and it was again noted that Plaintiff's "symptoms seem to exceed findings."  (*Id.*).  Subsequent examinations and diagnostic assessments failed to reveal findings suggesting that Plaintiff required a cane or is more limited than the ALJ recognized.  (ECF No. 6-8, 6-9, 6-10, PageID.405, 408, 469, 561, 563, 566, 570, 585, 588).  Finally,

treatment notes dated March 2, 2018, indicate that Plaintiff's gait was "normal" and that he was ambulating without a limp or assistive device. (ECF No. 6-12, PageID.679).

As for the ALJ's assessment of Plaintiff's activities, Plaintiff does not dispute that the ALJ is permitted to consider such when assessing his RFC. *See, e.g., Rudd v. Commissioner of Social Security*, 531 Fed. Appx. 719, 727-28 (6th Cir., Sept. 5, 2013) (when formulating a claimant's RFC, the ALJ must consider all the evidence of record). As the ALJ correctly recognized, Plaintiff reported a variety of activities which further support the conclusion that Plaintiff retains the ability to perform a limited range of light work. For example, from October 2016 through March 2018, Plaintiff reported cutting wood, carrying wood, using a wood splitter, and shoveling ash from a wood burning stove. (ECF No. 6-2, 6-10, 6-12, PageID.58-59, 535, 693, 699, 704). Plaintiff also reported, in March 2017, moving a dishwasher. (ECF No. 6-2, 6-10, PageID.59, 566).

In sum, the ALJ's assessment of Plaintiff's RFC is supported by substantial evidence. Accordingly, this argument is rejected.

**II.   Plaintiff's Alleged Lack of Treatment**

With respect to Plaintiff's shoulder impairment and carpal tunnel syndrome, the ALJ noted that Plaintiff "has only had conservative treatment for both." (ECF No. 6-2, PageID.59). The ALJ also noted that Plaintiff's "treatment for his impairments has been relatively conservative in nature," consisting primarily of physical therapy, injections, marijuana, and narcotics. (*Id.*, PageID.60). Plaintiff

-8-

takes issue with these observations on the ground that the ALJ "fail[ed] to make proper inquiries about his alleged lack of treatment."

There exists an important distinction, however, between a circumstance in which a claimant is unable to obtain necessary treatment because of an inability to pay and a circumstance in which a claimant's care providers simply fail to discern the need for more than conservative treatment. Plaintiff argues that he "saw several physicians who were aware of his complaints but who apparently decided not to recommend the surgery that his symptoms and his imaging studies obviously supported." The implication in Plaintiff's argument is that his care providers failed to recommend surgery or other aggressive treatment because Plaintiff lacked the means to pay for such.

As discussed below, Plaintiff did undergo cervical fusion surgery a little more than three months after the ALJ's decision in this matter. There is nothing in the record, however that supports the argument that, prior to the ALJ's decision, Plaintiff's care providers concluded that Plaintiff required surgery or more aggressive treatment but failed to recommend such due to Plaintiff's inability to pay. Rather, the evidence reveals that Plaintiff's care providers treated Plaintiff conservatively because such was, in their professional judgment, the most appropriate course of treatment. Accordingly, this argument is rejected.

### III. Sentence Six Remand

On March 21, 2019, Plaintiff underwent cervical fusion surgery at C5-C6. (ECF No. 6-2, PageID.38-40). Plaintiff submitted to the Appeals Council eleven pages of additional evidence relative to this development. (*Id.*, PageID.35-45). The Appeals Council denied relief on the ground that the evidence in question "does not relate to the period at issue" and, therefore, "does not affect the decision about whether [Plaintiff was] disabled beginning on or before December 13, 2018." (*Id.*, PageID.24). Plaintiff argues that he is entitled to a remand, pursuant to sentence six of 42 U.S.C. § 405(g), so that this evidence can be considered. The Court disagrees.

It is well understood that this Court cannot consider evidence which was not presented to the ALJ. *See Cline v. Commissioner of Social Security*, 96 F.3d 146, 148 (6th Cir. 1996); *Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007). If Plaintiff can demonstrate, however, that this evidence is new and material, and that good cause existed for not presenting it in the prior proceeding, the Court can remand the case for further proceedings during which this new evidence can be considered. *Cline*, 96 F.3d at 148. To satisfy the materiality requirement, Plaintiff must show that there exists a reasonable probability that the Commissioner would have reached a different result if presented with the new evidence. *Foster v. Halter,* 279 F.3d 348, 357 (6th Cir.2001). Plaintiff bears the burden of making this showing. *See Hollon ex rel. Hollon v. Commissioner of Social Security*, 447 F.3d 477, 483 (6th

-10-

Cir. 2006). Plaintiff's claim fails because he cannot demonstrate that consideration of the evidence in question is likely to result in a different outcome.

On February 26, 2019, Plaintiff participated in a CT scan of his cervical spine, the results of which revealed "multilevel degenerative changes. . .most pronounced at C5-C6." (*Id.*, PageID.44-45). As compared with a March 7, 2018 MRI of Plaintiff's cervical spine, the February 2019 CT scan reveals a significant worsening of Plaintiff's condition at C5-C6, the location where he underwent fusion surgery. Specifically, the March 2018 MRI revealed a small herniation at C5-C6 "without spinal stenosis or cord narrowing." (ECF No. 6-12, PageID.671-72). The February 2019 CT scan, however, revealed even further degenerative changes which produced "spinal canal narrowing." (ECF No. 6-2, PageID.44-45). Given this deterioration in Plaintiff's condition, fusion surgery was subsequently performed. This evidence fails to satisfy the materiality requirement, however, for two related reasons.

First, this evidence fails to demonstrate that Plaintiff, even following cervical fusion surgery, is disabled. The surgery appears to have been successful and even if it assumed that such further limits Plaintiff to the performance of sedentary work, the vocational expert testified that even if limited to sedentary work there still existed a significant number of jobs which Plaintiff would be able to perform. Furthermore, even if the Court assumes that this surgery rendered Plaintiff disabled, there is nothing in this additional evidence to suggest that any such disability began prior to December 13, 2018. It seems clear that Plaintiff's impairment at C5-C6 deteriorated between March 2018 and February 2019,

however, to find that such deteriorated to the point of disability prior to December 13, 2018, would, on the present record, require the Court to engage in pure speculation. Accordingly, this argument is rejected.

## CONCLUSION

For the reasons stated herein, the undersigned recommends that the Commissioner's decision be affirmed.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within fourteen days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within such time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Date: July 31, 2020        /s/ Phillip J. Green
                            PHILLIP J. GREEN
                            United States Magistrate Judge